IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT VERNON WOODS, | No. 07-05144 CW |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| FRANK X. CHAVEZ, Warden, | |
| Respondent. | |
| _____ | |
| ROBERT VERNON WOODS, | No. 07-5185 CW |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| FRANK X. CHAVEZ, Warden, | |
| Respondent. | |
| _____/ | |

  Petitioner Robert Vernon Woods, an inmate at Sierra Conservation Center State Prison, has filed two petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that two sentences under California's Three Strikes law, California

Penal Code §§ 667(b)-(i) and 1170.12, violate state law and constitute cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. Respondent Frank X. Chavez[1] opposes the petitions. Petitioner has not filed a traverse. Having considered all the papers filed by the parties, the Court denies the petitions.

BACKGROUND

I. Petition in C 07-5144 CW

In a complaint filed on December 29, 2004, Petitioner was charged with three counts of robbery. The complaint also alleged that Petitioner had five prior strike convictions and three prior serious felony convictions. On April 26, 2005, Petitioner waived his right to a preliminary hearing, plead guilty to all charges and admitted the enhancement allegations. On October 27, 2005, the court sentenced Petitioner to seventy-five years to life in prison and to forty-five years consecutive. On October 31, 2006, the California court of appeal affirmed the judgment in an unpublished opinion. On January 3, 2007, the California Supreme Court denied Petitioner's petition for review.

The California court of appeal summarized the facts as follows:

> Appellant was 44 years old when the trial court sentenced him to a total term of 120 years to life, representing a three strikes term of 25 years to life plus 15 years for a serious felony enhancement for each of three bank robberies committed during December, 2004. All three

---

[1] In accordance with Rule 2(a) of the Rules Governing § 2254 Proceedings and Rule 25(d)(1) of the Federal Rules of Civil Procedure, the Court substitutes Frank X. Chavez as Respondent because he is now Petitioner's custodian.

2

robberies were at Bank of America branches in San Jose. Resp.'s Ex. 6, <u>People v Woods</u>, H029514 (October 31, 2006) at 1. Petitioner carried out two of the robberies by handing a bank teller a note indicating he wanted money in fifty and one hundred dollar bills. Petitioner carried out the third robbery by telling the manager that he wanted one hundred thousand dollars in hundred dollar bills. He also told the manager that he had a bomb in his briefcase. At each robbery, Petitioner left the bank with a few thousand dollars. <u>Id.</u> at 2.

> According to the probation report, appellant said that he had been directed to rob the banks by voices that he had been hearing since April, 2001. In a letter to the court, Appellant said, "I am very remorseful for what I have done. The crimes I committed were not done for profit or personal gain, but the spirit voices can be quite overwhelming." The probation report states that appellant said that he "gave most of the money away to family, friends, and to the homeless. He also purchased $3,000.00 in flowers for a friend's funeral."

<u>Id.</u> at 2.

The court summarized the facts about Petitioner's sentencing as follows:

> At the time of the imposition of the sentence challenged here appellant was also sentenced on a separate case for theft from an elder and contracting without a license. . . . In that case, appellant did some yard work for a woman in her 90's and did not have a valid license to perform this work. Appellant collected one check for $3,500 from the victim at the start of the work and another $3,500 check after working for an hour and a half. Appellant admitted to the probation officer that he had knowingly overcharged the victim for the work but said that he "did a competent and complete job."
>
> Before sentencing, appellant filed a motion asking the court to reduce the theft from an elder charge to a misdemeanor and to dismiss appellant's strike priors. The motion described appellant's childhood. Appellant's father left him, appellant's mother, and appellant's three brothers. Appellant was sexually molested by his

3

uncle. Appellant's mother married a man who was physically abusive to appellant and his brothers. Appellant began running away, drinking alcohol, and smoking marijuana. When he was 15, he was sent to the California Youth Authority for armed robbery, burglary and forgery.

Appellant's first three strike priors were incurred in 1980 when appellant was residing in a drug treatment program. . . . Appellant was sentenced to four years in state prison for three counts of robbery.

In 1984, appellant and a friend "after days of binging on alcohol and cocaine" committed a residential burglary in which a handgun, ammunition, and other property were taken. . . . Appellant was sentenced to seven years in state prison. In 1992, appellant was convicted of making criminal threats to a woman he had been seeing socially and sentenced to 16 months in state prison.

In 2001, appellant got divorced, started smoking methamphetamine and crack cocaine, and began hearing voices. He attempted suicide by hanging himself in his mother's backyard and was hospitalized. In 2002, appellant began receiving treatment including medication from a mental health facility. Personnel there diagnosed appellant as "schizo effective, paranoid type." . . . In 2004, appellant was living in a facility for dual-diagnosed men. In August, 2004, he left this program "fearful the rampant drug use occurring at the facility by other residents would cause him to relapse." Appellant committed the bank robberies four months later.

After a 15 to 20 minute discussion of this sentencing in chambers, and hearing argument from counsel, the trial court denied appellant's motion to dismiss the prior strike convictions. The trial court reviewed appellant's criminal history noting, "he has performed poorly on probation. He has 6 felonies and 18 misdemeanor prior convictions and he was on probation at the time of the present offense." The court considered appellant's "background, character, and prospects" noting that appellant was divorced and had no dependent children. As to the charges of theft from an elder and contracting without a license, the court said that because those cases were not serious or violent, because of appellant's mental illness and drug and alcohol addiction, and because the codefendant had received a sentence of probation and 30 days on the weekend work program, the court would exercise its discretion to dismiss the prior strike allegations. As to the bank robbery charges, however, the court said, "I realize that Mr. Woods suffers from schizophrenia. The question in the Court's

4

>             mind is whether or not the public in passing the Three
>             Strikes Law and . . . the legislature had in mind people
>             such as Mr. Woods coming within the meaning of the Three
>             Strikes Law. [¶] I believe that Mr. Woods is a person who
>             should be taken from . . . the potential of doing harm to
>             those he comes in contact with. I believe that the best
>             place to do that is a prison facility which provides
>             mental health services to a person such as those in Mr.
>             Woods' situation." The court declined to strike the
>             prior strike allegations and sentenced appellant as
>             described above to a state prison term of 120 years to
>             life with the recommendation that appellant "be housed in
>             a State psychiatric medical facility."

Id. at 3-5.

II. Petition in C 07-5185 CW

On April 23, 2003, Petitioner plead guilty to possession of cocaine base, being under the influence of cocaine, and possession of drug paraphernalia, and admitted the truth of five prior strike convictions. On May 9, 2003, the court suspended imposition of sentence and granted probation for one year. On February 19, 2004, the court summarily revoked probation and issued a bench warrant for Petitioner. On April 8, 2004, the court found a violation of probation and ordered a mental health evaluation. On July 14, 2004, the court reinstated probation and extended the term to October 30, 2004. On September 10, 2004, the court again revoked probation and issued a bench warrant. On June 14, 2006, the court sentenced Petitioner to twenty-five years to life.

On June 25, 2007, the California court of appeal affirmed the judgment in an unpublished opinion. On August 29, 2007, the California Supreme Court denied Petitioner's petition for review. The court of appeal summarized the facts of the case as follows:

>             In December, 2002, appellant flagged down a police
>             officer to complain about a fare dispute with a cab
>             driver. The officer noticed that appellant appeared to

5

> be under the influence and that he kept putting his hands
> in his pockets. A search of appellant's person revealed
> a crack pipe and three baggies of a substance resembling
> crack cocaine. A urine test was presumptively positive
> for cocaine.

Resp.'s Ex. 6, People v. Woods, H030320 (June 25, 2007) at 1.

The court noted that, before his sentencing, Petitioner had filed a motion to dismiss his strike priors which included the same facts about his childhood, divorce and mental health problems that were stated in his motion to dismiss prior convictions in the bank robberies case. Id. at 3-4. The court quoted the trial court's consideration of the motion to dismiss:

> The [trial] court said, ". . . I've noted a very
> extensive criminal history that has continued to the
> present date including while . . . being supervised by me
> and was reviewed on a regular [basis]. He has continued
> to violate the law [and] his most recent conviction is of
> a serious felony that does pose in my view a threat to
> the community. [¶] I feel that based on my supervision of
> the defendant and all the reports I have received over
> these many, many months from probation and in the fact
> that he has continued [to] violate the law while on
> probation and pose a threat to the community that this
> motion should be denied."

Id. at 5.

## LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that

6

was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result. Clark v. Murphy, 331 F.3d 1062, 1067 (9th. Cir. 2003).

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is the holdings of the Supreme Court as of the time of the relevant state court decision. Williams v. Taylor, 529 U.S. 362, 412 (2000). If the state court only considered state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law. Lockhart v. Terhune, 250 F.3d 1223, 1230 (9th Cir. 2001).

To determine whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established law, a federal court looks to the decision of the highest state court that addressed the merits of a petitioner's claim in a reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000). In the present case, the highest court to address the merits of Petitioner's claims is the California appellate court on direct review.

DISCUSSION

I. Abuse of Discretion

In both petitions, Petitioner's first claim is that the state courts' refusals to dismiss his prior strike convictions were arbitrary and deprived him "of fundamental fairness in state sentencing, his liberty interest in non-arbitrary exercise of discretion, and, thus of due process."

Federal habeas relief is unavailable for violations of state law or for alleged error in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). A petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." Longford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996); see also, Ely v. Terhune, 125 F. Supp. 2d 403, 411 (C.D. Cal. 2000) (holding claim that state court erred by refusing to strike prior conviction not cognizable on habeas review).

In People v. Superior Court (Romero), 13 Cal. 4th 497, 508 (1996), the California Supreme Court held that a trial court may, on its own motion, strike prior felony conviction allegations in a case brought under the Three Strikes Law. In so holding, the court interpreted the language of California Penal Code § 1385(a). Thus, Petitioner's abuse of discretion claim arises under state law and he cannot transform it into a federal claim merely by asserting that the trial courts violated his right to due process. Because this is a state law claim, it is not cognizable on habeas review. Therefore, relief on this claim is denied.

II. Cruel and Unusual Punishment

Petitioner's second claim in both petitions is that his sentences are cruel and unusual in violation of the Eighth Amendment.

A. Established Supreme Court Authority

A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment's prohibition against cruel and unusual punishment. Solem v. Helm, 463 U.S. 277, 303 (1983) (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates Eighth Amendment). But "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." Id. at 289-90. For the purposes of review under 28 U.S.C. § 2254(d)(1), it is clearly established that a "gross proportionality principle is applicable to sentences for terms of years." Lockyer v. Andrade, 538 U.S. 63, 72, 73 (2003).

In Harmelin v. Michigan, 501 U.S. 957 (1991), Chief Justice Rehnquist and Justice Scalia joined in a two-justice plurality to conclude that Solem should be overruled and that no proportionality review is required under the Eighth Amendment except with respect to death sentences. Id. at 961-985. A three-justice concurrence made up of Justices Kennedy, O'Connor and Souter concluded that Solem should not be rejected and that the Eighth Amendment contains a narrow proportionality principle that is not confined to death penalty cases, but that forbids only extreme sentences which are grossly disproportionate to the crime. Id. at 997-1001. Because

9

no majority opinion emerged in Harmelin on the question of proportionality, Justice Kennedy's view--that the Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime--is considered the holding of the Court. United States v. Bland, 961 F.2d 123, 128-29 (9th Cir. 1992).

In judging the appropriateness of a sentence under a recidivist statute, a court may take into account the government's interest not only in punishing the offense of conviction, but also its interest "'in dealing in a harsher manner with those who [are] repeat[] criminal[s].'" Bland, 961 F.2d at 129 (quoting Rummel v. Estelle, 445 U.S. 263, 276 (1980)). The Eighth Amendment does not preclude a state from making a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime, as may occur in a sentencing scheme that imposes longer terms on recidivists. Ewing v. California, 538 U.S. 11, 29-30 (2003) (upholding twenty-five-to-life sentence for recidivist convicted of grand theft); Rummel, 445 U.S. at 284-85 (upholding life sentence with possibility of parole for recidivist convicted of fraudulent use of credit card for $80, passing forged check for $28.36 and obtaining $120.75 under false pretenses). Substantial deference is granted to state legislature's determination of the types and limits of punishments for crimes. United States v. Gomez, 472 F.3d 671, 673-74 (9th Cir. 2006).

B. Analysis

    1. Case No. C 07-5144 CW

In addressing this claim, the court of appeal properly relied

upon the Supreme Court jurisprudence discussed above and corresponding California law as explicated in In re Lynch, 8 Cal. 410 (1972). Resp.'s Ex. 6 in case no. C 07-5144 CW at 7-10. The court properly found that Petitioner's current offenses, three bank robberies, were more serious than those offenses at issue in Rummel and Ewing. Id. at 9. The court properly relied upon the fact that Petitioner's sentence was not punishment merely for the instant offenses, but for committing the robberies as a recidivist offender and that recidivism justifies the imposition of longer sentences for subsequent offenses. Id. at 10. The court found that Petitioner had repeatedly re-offended, performed poorly on parole, and was on probation when he committed the current offenses. Id. The court's conclusion that Petitioner's sentence was not cruel and unusual because he was sentenced not only for the three serious robbery convictions, but also due to his five strike convictions, was not contrary to or an unreasonable application of United States Supreme Court authority. Id. Therefore, this claim for habeas relief is denied.

2. Case No. C 07-5185 CW

In addressing this claim, the court of appeal primarily considered California law governing cruel and unusual punishment. Resp.'s Ex. 6 in case number C 07-5185 CW at 8-9. On habeas review, this is acceptable because California's jurisprudence regarding cruel and unusual punishment is in accord with that of the United States Supreme Court.

The court properly found that Petitioner's sentence was not punishment merely for the instant drug offense; rather, it was

11

punishment for committing the instant offense as a recidivist offender. Id. at 9. The appellate court recognized that the trial court had frequent contacts with Petitioner during the probationary period, received reports on his progress, and was aware of his mental health and drug abuse issues. Thus, the trial court was in an unusually well-informed position to make a determination about Petitioner's sentence. Id. at 9-10. The court of appeal noted that Petitioner had "repeatedly re-offended, performed poorly on parole, and failed on closely-monitored probation." Id. at 9. Given these findings, the court properly found that Petitioner's mental illness and drug problems did not compel the conclusion that his sentence was cruel or unusual. Id. The court's conclusion that Petitioner's sentence was not unconstitutional, because he was sentenced not only for the felony drug offense but also due to his five strike convictions, was not contrary to or an unreasonable application of United States Supreme Court authority. Id.

## CONCLUSION

Based upon the foregoing, Petitioner's two petitions for a writ of habeas corpus are denied. No certificate of appealability is warranted in this case. See Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition). Petitioner has failed to make a substantial showing that any of his claims amounted to a denial of his constitutional rights or to demonstrate that a reasonable jurist would find this Court's denial of his claims debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). The clerk of the court shall

enter judgment and close the files.  Each party shall bear his own costs.

Dated  Feburary 16, 2010

CLAUDIA WILKEN
United States District Judge

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>FOR THE<br>NORTHERN DISTRICT OF CALIFORNIA | |
| ROBERT VERNON WOODS,<br><br>　　　　Petitioner,<br><br>　v.<br><br>FRANK X. CHAVEZ, Warden,<br><br>　　　　Respondent.　　　　　　／ | Case Number: CV07-05144 CW<br><br>**CERTIFICATE OF SERVICE** |
| ROBERT VERNON WOODS,<br><br>　　　　Petitioner,<br><br>　v.<br><br>FRANK X. CHAVEZ, Warden.<br><br>　　　　Respondent.　　　　　　／ | Case Number CV07-5185 CW<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 16, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Robert Vernon Woods F-32883
T3-135-U
Sierra Conservation Center State Prison
5150 O'Byrnes Ferry Rd
Jamestown, CA 95327-0500

Dated: February 16, 2010

　　　　　　　　　　　　　　　　Richard W. Wieking, Clerk
　　　　　　　　　　　　　　　　By: Ronnie Hersler, Administrative Law Clerk

14